STATE of Missouri, ex rel. LIFEGUARD MEDICAL SERVICES, INC., Appellant,

v.

CITY OF INDEPENDENCE and John B. Amadio, Respondent.

No. WD 52783.

Missouri Court of Appeals, Western District.

Feb. 18, 1997.

Joseph Gall, Kansas City, for appellant.

Steven Mauer, Kansas City, for respondents.

Before SMART, P.J., and SPINDEN and ELLIS, JJ.

SPINDEN, Judge.

Independence officials refuse to allow Lifeguard Medical Services, Inc., to provide non-emergency ambulance services in the city although it is licensed by the Department of Health as an ambulance service. Lifeguard contends that the department's license autho-

rizes it to provide non-emergency services throughout the entire state even though the license restricts its emergency services to an area which does not include Independence.

Lifeguard sued for the circuit court's declaratory judgment that the law permits it to provide non-emergency services anywhere in Missouri under the department's license and for a writ of *mandamus* to compel Independence to allow it to operate in the city. The circuit court declared that the license did not authorize Lifeguard to provide statewide, non-emergency services, and it refused to issue a writ. Lifeguard appeals, and we affirm.

Independence ordinances require any ambulance service operating within the city's limits to obtain a license issued by its director of health.[1] City Code §§ 19.590–19.711. Pursuant to City Code § 19.640, Independence's director of health may issue a license only if he finds "[t]hat the public convenience and necessity require the proposed Ambulance Service."[2]

Lifeguard first applied for a license to provide non-emergency ambulance services in Independence on July 26, 1991. The city's director of health held a public hearing on Lifeguard's application on September 27, 1991. On November 18, 1991, the director of health recommended to the city's licensing division that Lifeguard's application be denied because Lifeguard did not establish that public convenience or necessity required the proposed ambulance service.

On October 6, 1994, Lifeguard again applied for a license to make non-emergency ambulance service calls in Independence. Without a hearing, the director of health denied the application. The director informed Lifeguard that he had held a public hearing approximately three months earlier on the question of public necessity and con-

---

1. Section 190.105.4, RSMo 1994, says, "The issuance of a license under the provisions of sections 190.100 to 190.195 shall not be construed so as to authorize any person, firm, corporation, or association to provide ambulance services or to operate any ambulances without a franchise in any county, municipality or political subdivision which has enacted an ordinance making it unlawful to do so." Lifeguard does not challenge Independence's ordinance on the ground that

§ 190.105.4 authorizes the city to issue only franchises, not licenses.

2. Section 190.105.5, RSMo 1994, says, "Section 190.100 to 190.195 shall not preclude the adoption of any law, ordinance or regulation not in conflict with this statute by any county, municipality or political subdivision."

venience on another company's application for licensure and found no need for additional ambulance services.

Lifeguard appealed the denial of its application to the Independence city council. The city council held a hearing and voted to affirm the director of health's decision and to deny Lifeguard's application to provide non-emergency ambulance services within the city. Lifeguard then pursued this lawsuit.

Lifeguard contends that the circuit court erred in denying its petition for declaratory judgment because the Independence ordinance requiring the director of health to find public convenience and necessity before issuing a license for non-emergency ambulance service conflicts with state law. It argues that this requirement imposes a new standard on the licensing of non-emergency ambulance services and that this standard under state statute and regulations applies only to the licensing of emergency ambulance services. Independence responds that the city's ordinance does not conflict with state law and that state law authorizes local regulation of non-emergency ambulance service. We affirm the circuit court's decision, not for any of the reasons raised by the parties, but for the simple reason that Lifeguard does not have the requisite license from the department.

Section 190.105.1, RSMo 1994, provides:

No person, either as owner, agent or otherwise, shall furnish, operate, conduct, maintain, advertise, or otherwise be engaged in or profess to be engaged in the business or service of the transportation of patients upon the streets, alleys, or any public way or place of the state of Missouri unless he holds a currently valid license for an ambulance issued pursuant to the provisions of sections 190.100 to 190.195.

The statute refers to transporting patients without distinguishing between emergency transports and non-emergency transports. Section 190.125, RSMo 1994, says:

1. The license officer shall, upon receipt of an application for an ambulance license as provided for by the provisions of sections 190.100 to 190.195, cause such investigation as he deems necessary to be made of the applicant and of his proposed operations.

2. The license officer shall issue a license hereunder for a specified ambulance, to be valid for a period of one year, unless suspended, revoked or terminated, when he finds, upon proper notice and hearing:

(1) That the public convenience and necessity require the proposed ambulance service[.]

This statute also does not distinguish emergency services from non-emergency services.

The distinction apparently arises from the manner in which the Department of Health has implemented the statutes. The parties seem to agree that the department has opted to regulate only emergency services and has ignored non-emergency services. In 19 C.S.R. 30–40.070(1)(b), for example, the department defines "primary service area" as the area where an ambulance service has historically made *emergency* calls.

The department seems to recognize that it is not fulfilling its statutory mandate as evidenced by a decision it rendered in a related case:

It is clear that the ambulance licensure law and its public convenience and necessity provision were intended to prevent destructive competition. It is also clear that routine calls are more lucrative than emergency calls because routine calls have a higher collection rate and lower variable costs than emergency calls. *Therefore, if the objectives of the statute are to be achieved, it would be most desirable to have the public convenience and necessity provisions allocate all calls and not just emergency calls.*

However, because ambulance services must be in a position to make long-distance transfers across multiple jurisdictional boundaries, it has not been possible to promulgate a rule which would allocate routine calls. The current regulation refers only to emergency calls....

Therefore, in regard to the dispute over routine calls, the Missouri Department of Health under its current rules lacks the authority to address the issue and the

matter becomes largely one of local regulation and ordinancing.

Final Decision of Missouri Department of Health concerning the Allocation of Primary Service Areas for Gold Cross Ambulance of Independence and Lifeguard Ambulance of Blue Springs, slip op. at 7 (July 1, 1991) (unpublished) (emphasis added) (footnotes omitted).

Lifeguard does not contest that the only license issued to it by the department in which the department considered public convenience and necessity was a license to provide emergency ambulance services in the primary service area of Blue Springs. Although Lifeguard contends that this license also authorizes it to provide non-emergency services throughout Missouri, it does not contend that the department evaluated the public convenience and necessity for those non-emergency services.

 The department has tried to limit the statutes' public convenience and necessity requirement to emergency services, but its regulation cannot restrict the General Assembly's mandate. *See Missouri Department of Social Services v. Administrative Hearing Commission,* 826 S.W.2d 871, 874 (Mo.App. 1992). Had the General Assembly intended to restrict the department's licensing authority to emergency services, it could have done so, but it chose instead not to distinguish between emergency and non-emergency services. *See Norwin G. Heimos Greenhouse, Inc. v. Director of Revenue,* 724 S.W.2d 505, 507 (Mo. banc 1987).[3]

Pursuant to § 190.105, Lifeguard can operate only where the department's license authorizes it to operate. Section 190.125 requires the department's director to determine whether the public convenience and necessity requires ambulance services—of whatever kind—in the area Lifeguard seeks to serve. Because Lifeguard is not licensed by the department to provide non-emergency ambulance services in Independence, it is not authorized to operate there, and we need not address Lifeguard's contention that Independence's ordinance conflicts with state law.

We affirm the judgment of the circuit court.

SMART, P.J., and ELLIS, J., concur.

---

**3.** This case was superseded by statute as stated in *Galamet, Inc. v. Director of Revenue,* 915 S.W.2d 331 (Mo. banc 1996). The rationale of the case, however, still applies to this case.