279 F.Supp.2d 1071 (2003)
Terry SENSABAUGH, Petitioner,
v.
Dave DORMIRE, Respondent.
No. 4:03CV441 DDN.
United States District Court, E.D. Missouri, Eastern Division.
July 21, 2003.
*1072 Terry Sensabaugh, Jefferson City, MO, Pro se.
Stephen D. Hawke, Andrew W. Hassell, Attorney General of Missouri, Assistant Attorney General, Jefferson City, MO, for Respondent.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before this court upon the petition of Missouri state prisoner Terry Sensabaugh for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c). The court concludes that Sensabaugh is not entitled to habeas relief.
On November 30, 1998, Sensabaugh was convicted in the Circuit Court of Jefferson County of drug trafficking in the first degree, in violation of Mo.Rev.Stat. § 195.222.8, based on aiding the manufacture of methamphetamine, Mo.Rev.Stat. § 562.041. (Resp.Ex. A-2). Sensabaugh was sentenced to 15 years imprisonment. Sensabaugh's conviction was affirmed on appeal. (Resp.Ex. E); State v. Sensabaugh, 9 S.W.3d 677 (Mo.Ct.App.1999).
On November 14, 2000, Sensabaugh filed a post-conviction relief motion pursuant to Missouri Supreme Court Rule 29.15. The circuit court denied the motion after an evidentiary hearing. (Resp.Ex. F). Sensabaugh appealed the denial of post-conviction relief and the Missouri Court of Appeals affirmed the denial on April 16, 2002. (Resp.Ex. J); Sensabaugh v. State, 72 S.W.3d 607 (Mo.Ct.App.2002).
On April 8, 2003, this court received a petition for a writ of habeas corpus from Sensabaugh. (Doc. 4). He seeks federal habeas corpus relief on three grounds:
(1) the trial court erred in denying his motion for judgment of acquittal because the state failed to adduce sufficient evidence to sustain his conviction; and
(2) the trial court erred by allowing the state's expert witness, Robert Irvin, to testify beyond the scope of his expertise; and
(3) Sensabaugh was denied effective assistance of counsel when counsel failed to object to the prosecutor's comment in closing argument that the State did not have to prove that petitioner manufactured methamphetamine. (Doc. 4 at 6A).

BACKGROUND
In its opinion, the Missouri Court of Appeals recounted the facts which support the verdict and which are relevant to Sensabaugh's allegations of constitutional violation:

*1073 On April 4, 1997, Detective Jeff Munzlinger from the Jefferson County Sheriff's Department, assisted by two other law enforcement officers, executed a search warrant of a mobile home in Fenton, Missouri. As the officers approached the residence, they detected a "very strong chemical smell." They knocked on the door and announced a search warrant. After receiving no response and hearing people running around inside the mobile home, the officers tried to open the door and felt resistance. They proceeded to use a battering ram to gain entry. Once they opened the door, Detective Munzlinger saw only one person, [Sensabaugh]. The officers found four others elsewhere in and around the house, including Evangeline "Vangie" Tosti and Linda Gatson.
The officers searched [Sensabaugh] and found $1900 rolled up in a rubber band in his left pant pocket, as well as rolling papers and marijuana. The officers also searched the mobile home and found numerous items used in the manufacture of methamphetamine, including Nasal Equate sinus tabs, some of which were counted out, some of which were soaking, and some of which were ground down, a sifter, a grinder, bottles and a case of Everclear, boxes and two cases of starting fluid batteries, canisters, coffee filters, and a tub. The officers found the items in plain view throughout the mobile home. The officers also seized three mason jars containing a liquid layer and a powdery substance later determined to be methamphetamine in a total amount of 751.19 grams.
After being advised of his right, [Sensabaugh] made the following written statement: "Terry Sensabaugh know that Vangie and Linda makes the dope, meth. Linda is the big cook, Vangie get the shit from the store to cook the meth." After writing the statement, [Sensabaugh] orally admitted that the money found in his pocket was from selling methamphetamine for the two women.
State v. Sensabaugh, 9 S.W.3d at 678-79.

EXHAUSTION AND STANDARD OF REVIEW
Respondent concedes that Sensabaugh's claims are exhausted. (Doc. 6 at 3.) Respondent does not argue that any of the three alleged federal habeas corpus grounds are procedurally barred. Therefore, the undersigned has reviewed the merits of each.
Federal habeas relief may not be granted on any claim that was adjudicated on the merits in State court unless the adjudication of the claim:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). "A State court's decision is contrary to clearly established law `if the controlling case law requires a different outcome either because of factual similarity to the State case or because general federal rules require a particular result in a particular case.'" Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir. 1999) (quoting Richardson v. Bowersox, 188 F.3d 973, 977-78 (8th Cir.1999), cert. denied, 529 U.S. 1113, 120 S.Ct. 1971, 146 L.Ed.2d 801 (2000)), cert. denied, 531 U.S. 886, 121 S.Ct. 204, 148 L.Ed.2d 143 (2000).
The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether *1074 the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (plurality opinion). The Supreme Court has distinguished an unreasonable application of federal law from an incorrect application of federal law. Id. at 365, 120 S.Ct. 1495. "A federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. Further, a state court's determination of a factual issue is presumed to be correct and must be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

DISCUSSION

GROUND 1
Sensabaugh's first claim is that the trial court erred in denying his motion for judgment of acquittal because the state failed to adduce sufficient evidence to sustain his conviction. The federal standard for determining the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).
The Missouri Court of Appeals viewed the following evidence in the light most favorable to the state:
Defendant was present in a mobile home in which it was apparent that methamphetamine was being manufactured and he admitted he knew that the two women in the mobile home made methamphetamine. He did not respond to the police knock and stood inside while they forcibly entered the house. More importantly, he sold methamphetamine for the two women who manufactured it, thus providing an outlet for their manufacture.
State v. Sensabaugh, 9 S.W.3d at 679. Viewed in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Sensabaugh was convicted of first-degree drug trafficking, in violation of Mo.Rev.Stat. § 195.222.8, under accomplice liability, Mo. Rev.Stat. § 562.041.1(2).
Under Missouri law, accomplice liability encompasses "encouragement". State v. Richardson, 923 S.W.2d 301, 317 (Mo. banc 1996). Similarly, under federal law, accomplice liability exists if "before or at the time the crime was committed, he knew the offense was being committed or was going to be committed; he knowingly acted to encourage, aid, or cause the offense ...." United States v. Delpit, 94 F.3d 1134, 1151 (8th Cir.1996). Sensabaugh asserts that the evidence does not support his conviction because the state did not prove that he actually manufactured the methamphetamine. He relies on Jury Instruction No. 5 as the source of error, although this instruction clearly sets forth that he is held responsible for manufacturing methamphetamine by aiding or encouraging others in the manufacturing process. (Resp. Ex. B at 40).
Instruction 5 stated:
A person is responsible for his own conduct and he is also responsible for the conduct of other persons in committing an offense if he acts with the other persons with the common purpose of committing that offense, or if, for the purpose of committing that offense, he aids or encourages the other persons in committing it.
As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

*1075 First, that on or about April 4, 1997, in the County of Jefferson, State of Missouri, the defendant or Evangeline Tosti or Linda Gatson manufactured by a combination of extraction and chemical synthesis 450 grams or more of any compound or mixture or preparation containing any quantity of methamphetamine, a controlled substance, and
Second, that defendant or Evangeline Tosti or Linda Gatson knew that the mixture he or she manufactured contained methamphetamine a controlled substance,
then you are instructed that the offense of trafficking in the first degree by manufacturing 450 grams or more of any compound or mixture or preparation containing any quantity of methamphetamine, a controlled substance, has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:
Third, that with the purpose of promoting or furthering the commission of that trafficking in the first degree, the defendant aided or encouraged Evangeline Tosti or Linda Gatson in committing that offense,
then you will find the defendant guilty under Count I of trafficking in the first degree by manufacturing 450 grams or more of any compound or mixture or preparation containing any quantity of methamphetamine, a controlled substance.
However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.
As used in this instruction, the term "Manufacture or Manufactured" means the production, preparation, propagation, compounding, or processing of drug paraphernalia or of a controlled substance or an imitation controlled substance, either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container; except that this term does not include the preparation or compounding of a controlled substance or an imitation controlled substance by an individual for his own use or the preparation, compounding, packaging, or labeling of a narcotic drug:
(a) by a practitioner as an incident to his administering or dispensing of a controlled substance or an imitation controlled substance in the course of his professional practice; or
(b) by a practitioner or his authorized agent under his supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale.
If you do find the defendant guilty under Count I of trafficking in the first degree by manufacturing 450 grams or more of any compound or mixture or preparation containing any quantity of methamphetamine, a controlled substance, you will return a verdict finding him guilty of trafficking in the first degree by manufacturing 450 grams or more of any compound or mixture or preparation containing any quantity of methamphetamine, a controlled substance.
(Ex. B at 40-41.)
The trial evidence proved that Sensabaugh was present at the scene of a functioning methamphetamine laboratory. He did not answer to the announcement of the police officers' search warrant at the home. He admitted that he knew manufacturing of methamphetamine was taking *1076 place in the home, and he admitted to selling methamphetamine that was produced in the home. Sensabaugh denies admitting to selling methamphetamine, but there is no evidence in the record to the contrary. Because a rational trier of fact could infer that Sensabaugh encouraged the manufacture of methamphetamine based on this evidence, the decision of the Missouri Court of Appeals is not contrary to, nor an unreasonable application of federal law. Ground 1 is without merit.

GROUND 2
Sensabaugh's second claim is that the trial court erred by allowing state's expert witness Robert Irvin to testify beyond the scope of his expertise. Sensabaugh claims that the admission of this evidence prejudiced the jury against him. Evidentiary rulings are state-law questions and the Supreme Court has ruled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).
The issue before this court is whether the admission of this evidence violated Sensabaugh's federal constitutional rights. "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir.1998) (quoting Parker v. Bowersox, 94 F.3d 458, 460 (8th Cir. 1996), cert. denied, 520 U.S. 1171, 117 S.Ct. 1439, 137 L.Ed.2d 545 (1997)). The Missouri Court of Appeals determined this claim as follows:
For his second point defendant asserts that the trial court plainly erred when, after the state's expert witness testified that he knew the statutory definition of manufacturing methamphetamine, the court allowed the prosecutor to elicit an opinion from the expert that, in his opinion, methamphetamine was being manufactured in the mobile home. Defendant contends that that testimony exceeded the witness's expertise, stated legal conclusions, and invaded the province of the jury who could determine manufacture from the evidence.
* * * * * *
The purpose of expert testimony is to assist the jury in areas which are outside of everyday experience or lay expertise. State v. Gola, 870 S.W.2d 861, 864 (Mo.App.1993). The amended information charged defendant, acting with another, manufactured, by a combination of extraction and chemical synthesis, methamphetamine.
Section 195.010(23) provides in relevant part that "manufacture" means: "the production, preparation, propagation, compounding or processing of drug paraphernalia or of a controlled substance, ... either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis ...." Instruction No. 5 required the jury to determine whether manufacturing took place as so defined in the statute. Defendant made a written admission that "meth" was being "cooked" in the trailer and Det. Munzlinger testified that the items observed and seized were all part of the manufacturing process. The testimony of the expert witness, a criminalist with a college degree and additional training in drug analysis, aided the jury in that it clarified that the process used was a process involving chemical extraction and synthesis, as set out in the statute, which a person without knowledge and experience would not necessarily *1077 have known. Because there is no substantial ground for plain error review, point two is denied.
State v. Sensabaugh, 9 S.W.3d at 680. The admission of this expert testimony did not violate Sensabaugh's constitutional rights by prejudicing the jury and depriving him of due process. Robert Irvin testified that to a reasonable degree of scientific certainty methamphetamine manufacturing had taken place at the arrest site. (Resp. Ex. A-1 at 161). Sensabaugh claims that this testimony violates his constitutional rights because this expert was not present at the arrest site. However, Sensabaugh's written admission that methamphetamine manufacturing was taking place at the arrest site was admitted into evidence before the jury. (Id. at 176.)
Sensabaugh admitted the facts which the evidence which he is now challenging sought to prove. The expert's testimony, based on the evidence submitted, helped the jury understand the process of chemical extraction to manufacture methamphetamine, as required by Missouri law. This scientific knowledge is not known by ordinary jurors. This type of testimony is admissible under both Missouri and federal law. See Federal Rule of Evidence 702. Ground 2 is without merit.

GROUND 3
Sensabaugh's third claim is that he was denied effective assistance of counsel when counsel failed to object to the prosecutor's comment in closing argument that the State did not have to prove that Sensabaugh manufactured methamphetamine. The Missouri Court of Appeals summarily denied this claim. Sensabaugh v. State, 72 S.W.3d 607 (Mo.Ct.App.2002). The specific part of the closing argument complained of is as follows:
The defense also wants to argue that we didn't show that [Sensabaugh] helped them do anything. We don't have to show that he helped them do anything. Look at this instruction. Did he aid or encourage them? Well, did he aid them? Would aiding them be trying to hold the door so the officers can't come in? Would encouraging them include that you share in the profits of the methamphetamine? Distribution which you in fact tell the officer that you are a part of? Would that be aiding or encouraging? I believe so. We are not just at maybe or probably, we are way at firmly convinced.
Resp. Ex. A-2 at 224 (emphasis added). A petitioner claiming ineffective assistance of counsel must show (1) that his attorney's performance was deficient and did not conform to that of a reasonably competent attorney; and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Defense counsel's failure to object to the complained-of statement was reasonable. At Sensabaugh's post-conviction evidentiary hearing, defense counsel testified as follows:
Q. [Prosecutor] Do you find that to be an objectionable argument?
A. [Defense counsel] At the time what I thought he was saying was that [the prosecutor] didn't have to show that [Sensabaugh] was actually helping them to manufacture the meth.
Q. Do you believe that to be a correct statement of the law?
A. Yes, I did, because all he has to do is aid, encourage, he doesn't have to be back there helping them cook it, and so I thought that was a correct statement of the law, and I thought about objecting because it doesn't-at first it picks your ear, it doesn't sound right, but I thought well, I *1078 guess it's factually correct, so I didn't.
* * * * * *
Q. Why did you not object?
A. It was a strategic decision on my part.
* * * * * *
Q. And did you consider the perils of objecting to it?
A. Well, I didn't consider the perils of it, I just thought that it would be overruled, because I thought what he stated was factually correct.
Resp. Ex. F at 28-29. Under Strickland, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689, 104 S.Ct. 2052. Defense counsel not only testified that it was a strategic decision; but the decision can also be considered sound trial strategy. Defense counsel believed the objection would have been overruled since the prosecutor's comment was a correct statement of Missouri law on accomplice liability. See State v. Sensabaugh, 9 S.W.3d at 679; Mo.Rev.Stat. § 562.041.1(2). Defense counsel's objection would have been without merit and the Missouri Court of Appeals properly decided that defense counsel used reasonable professional judgment.
Further, under Strickland, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Strickland at 692, 104 S.Ct. 2052. Defense counsel's failure to object to the challenged statement did not prejudice the jury against the defense. The prosecutor correctly stated Missouri law on accomplice liability and referred the jury to Instruction 5 which also contained a correct statement of accomplice liability. See Resp. Ex. B at 40; Mo.Rev.Stat. § 562.041.1(2). The Supreme Court has stated, "[we] presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." United States v. Olano, 507 U.S. 725, 740, 113 S.Ct. 1770, 123 L.Ed.2d 508, (1993) (quoting Francis v. Franklin, 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)). Thus, the jury in this case are presumed to have understood and followed Jury Instruction 5 which correctly stated Missouri law. Because defense counsel performed as a reasonably competent attorney and the defense was not prejudiced by the omission of the objection, Sensabaugh's ineffective assistance of counsel claim does not meet the requirements of the Strickland standard. Ground three is without merit.
Sensabaugh makes further claims of prosecutional misconduct in his Traverse to the State's Show of Cause. (Doc. 8). These additional claims were not addressed in either Sensabaugh's petition for a writ of habeas corpus to this court or in his state post-conviction proceedings. (See Doc. 4; Resp. Ex. E, H, J). Because these claims were not raised in the courts of the State, this court cannot review them. See 28 U.S.C. § 2254(b), (c).
For these reasons, the petition for a writ of habeas corpus of Terry Sensabaugh is denied. An appropriate Order is issued herewith.